UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22321-CIV-SINGHAL/STRAUSS

MIGUEL MARTIN LUGO,

    Movant,

vs.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## **ORDER**

**THIS CAUSE** is before the Court on Miguel Martin Lugo's ("Lugo" or "Movant") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion"). (DE [1]). The Court referred the Motion to Magistrate Judge Jared M. Strauss for report and recommendation. (DE [5]). Judge Strauss issued a Report and Recommendation ("Report") (DE [17]) recommending that the Motion be denied.

Movant timely filed objections (DE [20]) to which the government responded (DE [23]) by adopting the arguments it presented in its opposition brief and reiterating its argument that three of Movant's claims are procedurally barred. Movant objects to virtually every recommendation and underlying conclusion offered by the Magistrate Judge. The Court has carefully considered the Report, the parties' written submissions, the record, and applicable law and has conducted a *de novo* review. For the reasons discussed below, the Report is adopted, and Movant's objections are overruled.

    I.    BACKGROUND

Movant had a trucking business where he would transport vehicles between states. He was accused of being involved in a drug distribution ring where cocaine was transported between Miami and Texas. (DE [1] p. 3). Movant pled not guilty and went to

trial. *Id.* Four co-defendants pled guilty and testified against Movant. *Id.* After a jury trial, Lugo was found guilty of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h). He was found not guilty of a charge of possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii).

The Court sentenced Lugo to a total of 292 months imprisonment followed by a total of 5 years of supervised release. Lugo appealed to the Eleventh Circuit, challenging the length of his sentence, the Court's refusal to depart from the guideline range, and the Court's alleged failure to consider Lugo's background and family situation or the sentence of his co-defendants. *United States v. Lugo,* 2023 WL 2543132, at *1 (11th Cir. Mar. 17, 2023). The Eleventh Circuit affirmed the sentence. *Id.* Lugo did not seek a writ of certiorari to the Supreme Court. He timely filed his § 2255 Motion.

Lugo argues his trial counsel was ineffective under *Strickland v. Washington,* 466 U.S. 668 (1984). He claims his lawyer was ineffective for failing to keep out or object to much of the case agent's testimony; in not objecting to comments made by the prosecutor during closing argument; in not raising the first two issues on appeal; and by not presenting evidence – including expert testimony – about the sentencing benefits the testifying co-defendants would receive because of their cooperation and testimony. He further argues that the cumulative effect of defense counsel's acts and omissions deprived him of his fundamental right to a fair trial.

The government argues that the issues of the agent's testimony, the prosecutor's comments, and the cumulative effect of trial errors are procedurally barred because Lugo did not raise them on direct appeal. Further, the government argues that Lugo's objections are without merit and should be overruled.

2

## II. LEGAL STANDARDS

### A. Standard of Review

When a party properly objects to a magistrate judge's findings or recommendations, the district court must conduct a *de novo* review of the objected-to findings. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "A proper objection identifies the portions of the proposed findings and recommendation to which the objection is made and the specific basis for the objection." *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989). The court may then "accept, reject, or modify in whole or in part, the findings or recommendations of the magistrate [judge]." *Id.*

### B. Ineffective Assistance of Counsel

"To prevail on a claim for ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense." *Perkins v. United States,* 73 F.4th 866, 879 (11th Cir. 2023) (citing *Strickland,* 466 U.S. at 687). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* (quoting *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*) (quoting *Strickland*, 466 U.S. at 689)).

A lawyer is deficient when he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. There is a "strong presumption" that counsel's performance was reasonable and that his decisions were made "in the exercise of reasonable professional judgment." *Perkins,* 73 F.4th at 879 (quoting *Chandler,* 218 F.3d at 1314). The court should not look at the performance with hindsight and should "evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. "And 'because counsel's conduct is presumed reasonable, for a petitioner to show that the

3

conduct was unreasonable, a movant must establish that no competent counsel would have taken the action that his counsel did take.'" *Bilotti v. Fla. Dep't of Corr.,* 133 F.4th 1320, 1329 (11th Cir. 2025) (quoting *Chandler,* 218 F.3d at 1315).

To establish prejudice, the movant "must show that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland,* 466 U.S. at 687). There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

If the movant fails to establish one prong of the *Strickland* inquiry, the court need not address both prongs. *Bilotti,* 133 F.4th at 1329.

### III. DISCUSSION

As an initial matter, the Court agrees with the Magistrate Judge that Movant's claims about the trial evidence are the basis of Movant's ineffective assistance of counsel claim and are not, therefore, procedurally barred for failure to challenge the evidence on direct appeal. Although the correctness of the underlying issues is necessarily tied into the ineffective assistance of counsel claim, the Motion properly addresses the sufficiency of counsel's actions.

#### A. Testimony of Agent Weber

Movant argues his lawyer was ineffective under *Strickland* because he failed to file a motion to exclude, or otherwise object, to testimony offered by the lead agent, Agent Weber ("Weber"). Movant argues that Weber was permitted to offer opinion testimony, summarize and interpret conversations between co-defendants, and identify Movant as "Tio." Movant argues this testimony consisted of improper opinion testimony that gave

4

credibility to co-defendants and invaded the province of the jury.[1] Movant argues that Weber's testimony "placed the imprimatur of 'expertise' on his view of the facts of the case" and saturated the trial with Weber's opinion of Movant's guilt. Movant argues that Weber's testimony should have been inadmissible under *United States v. Hawkins,* 934 F.3d 1251 (11th Cir. 2019), and his lawyer was, therefore, ineffective for failing to move to exclude or otherwise object to Weber's testimony and further by failing to challenge Weber's testimony on appeal.

In *Hawkins,* the Eleventh Circuit reversed a conviction because of the case agent's "extensive improper testimony." *Id.* at 1269. Throughout his testimony, the prosecutor asked the agent "to opine about what he 'thought was taking place,' 'thought was happening,' 'or 'assessed as happening' through text messages and phone calls." *Id.* at 1263. The agent offered "many unfettered narrative responses." *Id.* The agent was the case's primary witness who testified for more than half of the 3-day trial and whose testimony produced over 200 pages of transcript. *Id.* at 1267.  He was the only witness who testified about Hawkins. *Id.* The case agent was produced as both an expert witness and a fact witness, and the court found that the "conflating of lay and expert testimony" "seriously affected the fairness, integrity, and reputation of the trial." *Hawkins,* at 1268.

The Eleventh Circuit has twice distinguished *Hawkins* and in both cases recognized that lay opinion testimony offered by agents is different than opinion testimony offered by an agent who has been qualified and presented as an expert witness. *See United States v. Pendergrass,* 995 F.3d 858, 880 (11th Cir. 2021) (distinguishing *Hawkins*); *United States v. Wall,* 116 F.4th 1285, 1307-08 (11th Cir. 2024) ("This case is like *Pendergrass,* not *Hawkins*. Here, the case agents whose testimony is challenged

---

[1] The testimony in question can be found in the transcript of the criminal case, *United States v. Lugo,* Case No. 19-cr-20796-SINGHAL (CR DE [616]) at pages 44-45; 59-66; 72-73; and 89-90.

were not qualified as experts, so no danger of confusion between factual and expert-opinion testimony existed.").

Contrary to Movant's argument and unlike in *Hawkins,* Weber did not testify as an expert; he was the case agent and offered lay testimony about the surveillance and recorded phone conversations, including interpretation of coded language. This is permissible testimony. Law enforcement officers are permitted to offer lay opinions about code words and nicknames. *United States v. Graham,* 123 F.4th 1197, 1260 (11th Cir. 2024) (citations omitted); *United States v. Booker,* 136 F.4th 1005, 1020 (11th Cir. 2025). The failure of Movant's counsel to object to Weber's testimony was not ineffective assistance of counsel.

Movant argues that Weber's testimony impermissibly testified about and summarized as fact statements made in non-coded conversations. Both the Magistrate Judge and the government acknowledge that "some" of Weber's testimony "arguably stray[ed] into improper interpretations of conversations as a whole." (DE [17] pp. 11-12). Neither identify the testimony in question, but the Magistrate Judge concluded that counsel's failure to object was not so patently unreasonable to rise to the level of ineffective assistance of counsel because Movant's co-conspirators were expected to offer similar testimony.

The Court has reviewed the areas of testimony challenged by Lugo and only finds one segment that could arguably be construed as improper summary:

> Based on the wiretap calls, what happened?
>
> *Moises Ponce had a vehicular problem with his truck and it broke down in Pensacola, Florida.*
>
> And did he have the car fixed in Pennsylvania – in Pensacola?
>
> *No.*

> Based on the wiretap calls, what happened?
>
> *There was a conversation between Jose Luis Perez and Miguel Martin regarding – they were fearful or concerned about – that the truck had money hidden in a compartment – sorry. They had money hidden at that point in a compartment, and so they decided to have the vehicle towed from Pensacola all the way to Miami, Florida.*
>
> Approximately how far is it from Pensacola to Miami?
>
> *I think it's over ten hours.*
>
> To your knowledge are there repair shops in Pensacola?
>
> *Yes.*
>
> So what happened after Moises Ponce had the breakdown and began getting towed back from Pensacola?
>
> *They decided to send Ernesto Rivero Perez to McAllen.*

(CR DE [616] pp. 55-56). The Court agrees with the Magistrate Judge that this testimony is not prejudicial; at least one of the co-conspirators testified about the hidden compartment, the broken-down truck, and the repair in Miami. *See* Tr. Jose Perez (CR DE [617] pp.6-15). To establish prejudice, the Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Wiggins v. Smith,* 539 U.S. 510, 534 (2003) (quoting *Strickland,* 466 U.S. at 964). The Court cannot say the result would have been different had Weber not testified when substantially identical testimony was offered later in the trial.

The Court also agrees with the Magistrate Judge that the failure to object can be classified as a reasonable tactical decision in light of other testimony and witnesses who were expected to testify. As in *Pendergrass* and *Wall*, and unlike in *Hawkins,* the agent

7

was not the primary witness in the case: 8 witnesses, including 4 co-conspirators testified over 3 days and the government introduced over 50 pieces of evidence, including audio recordings of phone calls, phone subscriber records, and surveillance and other photographs. (CR DE [493] and [494]). *Hawkins* is inapplicable to this case and the Magistrate Judge correctly determined that Movant failed to establish that the failure to object to Agent Weber's testimony amounted to ineffective assistance of counsel. And because the Agent's testimony was not improper or prejudicial, counsel was not ineffective for failing to raise the issue on appeal.

### B. Closing Argument

Movant argues his lawyer was ineffective for failing to object to improper comments in the prosecutor's closing argument. Movant contends that the prosecutor impermissibly vouched for the credibility of the testifying co-defendants and impermissibly used arguments about "our communities" and "holding Lugo accountable."

#### 1. Vouching for witnesses

The prosecutor's closing contained the following statements that Movant argues should have been objected to and appealed:

> [Y]ou can compare their testimony to the evidence and to the other cooperators' testimony and decide whether they're telling the truth . . .You heard in the cooperation agreements they agreed to provide truthful information. When they lied, they were caught by the federal agents, and they were forced to admit it. And when they did lie, they came in here, and they told you. We asked them, 'Did you lie about this?' And they told you. But about the defendant, Miguel Martin, they were truthful from the beginning. (CR DE [619] p. 47:19–48:3).
>
> You also … heard how these debriefs happen. The cooperators aren't told what to say. They're not fed a story. They're asked questions, open-ended questions. They show them pictures with no context and ask them about their relationships with certain people. And . . . it

8

> was explained to you that the testimony here is one part of their cooperation. They provided truthful information on a number of people. (*Id.* at 48:4–8).
>
> [T]hey pled guilty, and they decided to cooperate. And their cooperation was not limited just on him. They spoke about everybody else, and the testimony that they gave is consistent with the evidence that was brought out in this case. (*Id.* at 89:15– 18).

The Magistrate Judge concluded that these comments were not improper vouching and the Court agrees. "A prosecutor's comments are considered improper vouching either '(1) by placing the prestige of the government behind the witness, or (2) by indicating that information not before the jury supports the witness's credibility.'" *United States v. Booker*, 136 F.4th 1005, 1018 (11th Cir. 2025) (quoting *United States v. Maradiaga*, 987 F.3d 1315, 1327 (11th Cir. 2021)). The statements made by the prosecutor in this case did neither. Instead, the comments properly addressed a credibility issue that was raised by the defense.

"The prohibition on vouching does not prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case, if the prosecutor makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence." *Id.* (quotations omitted). The Court must look at any alleged improper statements in a "relevant context." *United States v. Sosa,* 777 F.3d 1279, 1297 (11th Cir. 2015). The Magistrate Judge concluded that the first two comments were a direct and fair response to defense counsel's trial strategy of discrediting the witnesses because of their plea agreements.

Defense counsel challenged the truthfulness of the witness' testimony by showing the bias inherent in their cooperation. During his opening statement, defense counsel stated that the evidence would show the witnesses were going to lie because they have

9

nothing to lose and everything to gain. During trial, counsel cross-examined the witnesses on their plea agreements and anticipated benefits. The credibility of these witnesses was central to the government's case.

During closing, the prosecutors' comments addressed those concerns; in addition, her comments about truthfulness were tied to the evidence in the case. As she began to discuss the witness' credibility, the prosecutor told the jurors they "can compare their testimony to the evidence and to the other cooperator testimony and decide whether they're telling the truth." ([CR DE 619] p. 47). The prosecutor then recounted each witness' testimony in detail and argued that the evidence showed "[t]hey were truthful about what they saw and what they didn't see." ([CR DE 619] pp. 49-51). No vouching occurred and defense counsel's failure to object or raise the issue on appeal was not ineffective assistance of counsel.

Likewise, the prosecutor's third challenged comment did not warrant an objection. The Magistrate Judge correctly concluded that the prosecutor "was merely stating that the witness' testimony was consistent with the evidence presented to the jury earlier." (DE [17] p. 16). This was a comment on the consistency of the evidence, not improper vouching. Defense counsel did not render ineffective assistance of counsel by not objecting or by not raising the issue on appeal.

2. <u>Prejudicial or inflammatory comments</u>

Movant contends his lawyer was ineffective because he did not object to or appeal the prosecutor's comments about holding Movant accountable.

> And [Defense Counsel] is very passionate defending his client, as he should, because he has a tough job in here, and he has no burden whatsoever. But the United States is equally as passionate because when people commit crimes in our communities, they should be held accountable. And what this man did for profit

> – by sending hundreds and hundreds of kilograms of cocaine into our communities, he should be held accountable for it, and today is that day. (CR DE [619] p. 85).

The Magistrate Judge correctly determined that a prosecutor's use of the phrase "our communities" is neither unduly prejudicial nor inflammatory. The Eleventh Circuit has upheld prosecutor's arguments about the societal harm caused by drug traffickers. *United States v. Cardenas-Sanchez,* 352 Fed. Appx. 338 (11th Cir. 2009) (citing *United States v. Delgado,* 56 F.3d 1357, 1370 (11th Cir.1995) ("reference during closing argument to the drug problems of society and [a] defendant['s] role[ ] in such problems [is] not unduly prejudicial or excessively inflammatory" (internal quotation marks omitted)).  Likewise, it is not improper for a prosecutor to argue the defendant should be held accountable. *Id.*

Movant's objection that the "one-two" punch of referring to "our communities" and holding Movant accountable makes the prosecutor's argument highly improper is not supportable. The Magistrate Judge correctly concluded that Movant's lawyer's failure to object or raise the issue on appeal is not ineffective assistance of counsel.

    C. <u>Evidence of Witness' Bias</u>

Movant argues his defense lawyer was ineffective in his cross-examination of testifying co-defendants because he did not "fully, meaningfully, and properly present" evidence of the benefits the co-defendants had already obtained and hoped to obtain in the future by pleading guilty and testifying. He also complains that his lawyer did not present expert testimony from a lawyer with federal criminal practice experience who would testify about the effect on sentencing guideline calculations and minimum mandatory sentences a defendant could expect for cooperation and testimony. In short, Movant argues his lawyer should have introduced evidence of the maximum sentences

11

each cooperating defendant faced, and the effect each defendant's testimony could have had on the sentence he would ultimately receive.

The Magistrate Judge (and this Court) reviewed counsel's cross-examination of the testifying co-defendants and counsel's closing argument. Defense counsel did cross-examine each witness on benefits he received and would hope to receive for testifying against Lugo. The record is clear that each witness hoped to receive a lesser sentence. Defense counsel summed this up in his closing: "They've done what the government has asked them to do. Now they get their reduction." ([CR DE 619] p. 70).  The Magistrate Judge concluded that defense counsel was not ineffective in his cross-examinations of the testifying co-defendants.

Movant objects to the Magistrate Judge's conclusion and argues that defense counsel should have obtained testimony on the specific sentencing guideline calculations and charging decisions that resulted from each witness' cooperation. Although defense counsel could have elicited more details on cross, he put the issue before the jury and argued bias in his closing. The Court agrees with the Magistrate Judge that any perceived deficiencies in counsel's performance did not rise to the level of a constitutional ineffective assistance of counsel. *See Strickland,* 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance.").

Movant also argues defense counsel was ineffective for failing to hire and present a lawyer with federal criminal trial experience as an expert witness. Movant states this testimony would have had the expert explain sentencing guidelines, minimum mandatory sentences, and charging decisions, and then offer opinions on the maximum sentence each witness could have faced and the likely reduction he could obtain by testifying. The Magistrate Judge concluded that not calling such an expert "was not so patently

unreasonable a strategic decision that no competent attorney would have chosen this strategy." (DE [17] p. 24) (quoting *Dorsey v. Chapman,* 262 F.3d 1181, 1186 (11th Cir. 2001)). This Court agrees and further questions whether such expert testimony would have survived a challenge under Fed. R. Evid. 403.

In sum, this Court agrees with the Magistrate Judge's conclusion that defense counsel's handling of the bias of testifying co-defendants and cross examination of them did not rise to the level of ineffective assistance of counsel.

### D. Cumulative Error

Finally, Movant argues that the cumulative effect of counsel's errors deprived him of a fair trial. The Magistrate Judge concluded, and this Court agrees that because none of Movant's claims have individual merit, the argument that cumulative error deprived him of a fair trial lacks merit. *See Morris v. Sec'y, Dept. of Corrections,* 677 F.3d 1117, 1131 (11th Cir. 2012) ("As demonstrated above, none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate.").

### E. Certificate of Appealability

Movant has renewed his request for a Certificate of Appealability. Pursuant to 28 U.S.C. § 2253(c)(1), an appeal may not be taken from a final order in a habeas corpus or section 2255 proceeding unless a Certificate of Appealability is issued.  The certificate must contain a finding that the applicant has made a substantial showing of the denial of a constitutional right and must indicate which specific issue or issues satisfy the required showing.  Applying these standards, the Court finds that there is no substantial showing of a denial of a constitutional right and that a Certificate of Appealability should not issue.

IV.    CONCLUSION

After conducting a *de novo* review, the Court agrees with the Magistrate Judge that Movant has failed to establish ineffective assistance of counsel. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Report and Recommendation of the Magistrate Judge (DE [17]) is **APPROVED AND ADOPTED.** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (DE [1]) is **DENIED.** It is further

**ORDERED AND ADJUDGED** that Movant's request for a Certificate of Appealability is **DENIED.** The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of June 2025.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF